## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1578 | **DATE** | 10/3/2002 |
| **CASE TITLE** | EDWARD T. LIPKE, ET AL vs. JOHN F. LIPKE, ET AL | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **Motion (8-1) to dismiss is granted/denied in part. Count IV of the amended complaint is dismissed. Motion (13-1) and (14-1) to dismiss counterclaims and affirmative defenses is denied.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | OCT 04 2002 date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| DW | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 25

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

EDWARD T. LIPKE, as Trustee of the
EDWARD T. LIPKE TRUST, and EDWARD
T. LIPKE, individually,

    Plaintiffs,

v.

JOHN F. LIPKE AND LORI LIPKE,

    Defendants.

No. 02 C 1578
Judge James B. Zagel

DOCKETED
OCT 0 4 2002

## MEMORANDUM OPINION AND ORDER

This family dispute concerns a sum of money that a father transferred to his son and daughter-in-law. The parties dispute the nature of the transfer, the former believing the money to be a loan that remains unpaid, the latter believing the money to be a gift. The money was transferred by way of a Note for $135,000, which was secured by a Mortgage, both signed by defendants. Since then, no payments on the money have been made and plaintiffs now seek to enforce the Note by filing a five count complaint for: (1) breach of note; (2) specific performance of an oral contract; (3) fraud in the inducement and rescission; (4) breach of fiduciary duty; and (5) fraud. Defendants have filed counterclaims for fraudulent misrepresentation and declaratory judgment and affirmative defenses of promissory estoppel and fraudulent misrepresentation. Defendants have also filed a motion to dismiss plaintiffs' original Complaint. Subsequently, plaintiffs filed an Amended Complaint which cured most of the defects raised by defendants' motion, and the only remaining issue is Count IV, breach of fiduciary duty. Plaintiffs have filed motions to dismiss defendants' counterclaims and affirmative defenses, which I will also address in this opinion.

25

BACKGROUND

Defendant John F. Lipke is the son of plaintiff Edward T. Lipke. In 1981, John married Lori, after which John became estranged from his parents and ceased to communicate regularly with them. In April 1999, Edward and his wife Judith won a substantial amount of money in the Illinois lottery. Looking at the allegations of both parties in the various pleadings, it does not appear that these facts are contested. In contrast, what occurred subsequent to Edward and Judith's good fortune is very much in dispute.

Plaintiffs' story is as follows: John contacted his parents and asked for a loan to help him in his contracting business and/or improvement of his residence in Clarendon Hills, Illinois. Upon John's reassurance that he and his wife would repay the loan, Edward and Judith agreed to loan John and Lori the money, to be funded by the Edward T. Lipke Trust. On August 29, 2000, John and Lori signed a Note for $135,000. This Note provided for nine annual payments of $20,000 to be paid on August 29th of each year, beginning August 29, 2001, and ending August 29, 2009, and a final payment of $505.00 due on August 29, 2010. The Note was secured by a Mortgage, which was signed by John and Lori on that same day. Edward specifically required this so that he could recover the money if necessary. In August, 2001, John asked his father to release the Mortgage so that he could borrow an additional $60,000 from a bank, and he promised his father that he and Lori would execute a second mortgage to secure the Note. Edward released the Mortgage in reliance on his son's promises. Since then, John and Lori have not entered into the second mortgage, nor have they made the first payment of $20,000 due under the Note.

Defendants do not contest that they signed the Note and Mortgage, nor do they dispute the terms of the Note (i.e., amount, payment schedule, etc.). However, their version of the story is very different. According to defendants, it was Judith Lipke who initiated contact with John and Lori in

2

June of 2000. At this time, she told John that she had recently learned of his new home construction and that since winning the lottery, she and Edward had given substantial financial assistance to their other children. Judith expressed a desire to assist John and Lori in the construction and improvement of their new home. When John told his mother that he was in the process of securing conventional financing from a bank for $150,000, she told her son that she and Edward would gift the money to him. Judith also told John that since she and Edward had paid considerable taxes the prior year, she wanted to make the gift with no adverse tax consequences and would consult her accountant, Andy Midlock, to find the best way to transfer the money. A few days later, Judith called John to tell him that she and Edward would give him and Lori a substantial sum of money for the construction and improvement of their new home and instructed John to call Mr. Midlock to work out the proper procedure for completing the gift with no adverse tax consequences. The following day, John called Mr. Midlock, who told John that he was working on the arrangements for the gift so that Judith and Edward would suffer no adverse tax consequences. John told Mr. Midlock that he was cancelling his loan application, and Mr. Midlock told John that he would contact him as soon as the arrangements were completed. In early to mid August of 2000, Mr. Midlock contacted John and informed him that the arrangements were finished, and on August 29, 2000, John and Lori, Edward and Judith, and Mr. Midlock met in the office of John and Lori's attorney. At this time, it was explained to John and Lori that the gift would have to take the form of a Note secured by a Mortgage in order for Edward and Judith to escape adverse tax consequences. As mentioned previously, neither party disputes the contents of the Note. However, defendants allege that Edward and Judith told them that the "total gift amount would be excused over a period of ten (10) years," and it was based on these representations that defendants decided to sign the Note and Mortgage. Defendants believe that Edward and Judith "intended to rekindle and strengthen the familial bond with their son [and his

3

wife]" and assert that Edward and Judith "never placed any conditions or qualifications before making the . . . gift to [defendants]." John further alleges that he "expressly told [plaintiffs] that he would not accept the gift if any conditions were placed thereon" and that Edward and Judith released the Mortgage benevolently in order to allow him to get a loan from the bank. According to defendants, this action is the result of a breakdown in the relationship between defendants and Edward and Judith.

BREACH OF FIDUCIARY DUTY

The only unamended count surviving plaintiffs' repleading of the complaint is the claim for breach of fiduciary duty. Defendants assert that no fiduciary duty exists between the parties on two grounds: first, that a fiduciary relationship does not exist as a matter of law between a parent and child, and in the alternative, that plaintiffs have not pled facts sufficient to support the existence of a fiduciary duty. Although defendants are correct in that a fiduciary relationship "does not obtain between a parent and child as a matter of law," this alone is not grounds for dismissal, for a fiduciary relationship between a parent and child may be shown with clear and convincing evidence that is "so strong, unequivocal, and unmistakable as to lead to but one conclusion." *Clow v. Chicago Title and Trust Co.*, 292 N.E.2d 44, 48 (Ill. App. 1972). What must be shown is a relationship "where one person places so much trust and confidence in another that the person thereby gains a position of superiority and influence over the other." *In the Matter of the Estate of Gimpel*, 379 N.E.2d 940, 943 (Ill. App. 1978). Relevant factors include kinship, disparity in age, health, mental condition. *See Cacciatore v. Mobil Oil Corp.*, 2000 WL 1029168 (N.D. Ill. 2000). The facts alleged by plaintiffs to establish the existence of a fiduciary relationship are: (1) plaintiff Edward T. Lipke and defendant John F. Lipke are father and son and as such, "shared a familial relationship and close degree of kinship"; (2) at the time defendants asked Edward to release the mortgage securing the

4

note which transferred the money at issue, Edward and his wife were caring for a gravely ill child and were consequently emotionally and mentally distressed; (3) Edward's dealings with John and his wife were affected by John's return to the family after a period of estrangement; and (4) other unidentified circumstances. This claim for breach of fiduciary duty must comply with the "pleading with particularity requirement" of Fed. R. Civ. Pro. 9(b) ("Rule 9(b)"), so the question is whether the facts alleged by plaintiffs satisfy Rule 9(b). *See Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966) (holding that if a breach of fiduciary duty claim is essentially a "scheme to defraud," Rule 9(b) "must be followed").

Accepting the facts alleged by plaintiffs as true, which I must do for the purpose of this motion, it does not appear that the facts alleged by plaintiffs show that a fiduciary relationship existed between Edward and John. Kinship alone does not give rise to a fiduciary relationship, and Edward's and his wife's mental and emotional distress and John's prior estrangement from the family are not sufficient to show that John was in a position of superiority and influence over his father. Evidence that one family member transacted business or handled the financial affairs for another family member or that the allegedly dominated family member was seriously ill or displayed little to no interest in his personal affairs has been found to show that a fiduciary relationship existed. *See Kester v. Crilly*, 405 Ill. 425, 433 (1950); *Johnson v. Lane*, 369 Ill. 135, 147-48 (1938). In contrast, evidence that a father, old in age and experiencing physical limitations, gave authority to his son to withdraw funds from his savings account or that a father openly displayed a strong favoritism to one son or that a father placed his son in charge of his business after the son insisted that the father stop working due to poor health has been found insufficient to establish a fiduciary relationship. *See In the Matter of the Estate of Kieras*, 521 N.E.2d 263, 268 (Ill. App. 1988); *Stewart v. Sunagel*, 394 Ill. 209, 215 (1946); *Kriegel v. Miedema*, 155 N.E.2d 815, 242 (Ill. App. 1959).

5

Dismissal of a complaint is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Plaintiffs have not pled facts sufficient to show the existence of a fiduciary relationship and therefore, I am dismissing Count IV of their Amended Complaint.

Because Count IV was not changed in the Amended Complaint, I will not allow plaintiffs to file an amended pleading with respect to this claim in accordance with my Rule 16 order in open court, which was that if plaintiffs chose to stand on any of the claims alleged in the original Complaint that were subject to a motion to dismiss, they would not be granted leave to file an amended pleading on those claims thereafter.

FRAUDULENT MISREPRESENTION

Plaintiffs have moved to dismiss defendants' counterclaim and affirmative defense of fraudulent misrepresentation. Plaintiffs argue that dismissal of the counterclaim and affirmative defense is proper because defendants have failed to plead any damages. Defendants assert that they have pled the following damages: (1) forfeiture of conventional financing; (2) making substantial improvements and upgrades to their home; and (3) litigation fees and expenses. Plaintiffs argue that defendants' assertion that they have been damaged by receipt of money that has not been repaid at all is preposterous and that litigation fees and expenses are not recoverable on this claim. Defendants rely on *Michelin Tire Corp. v. Sullivan* for the proposition that litigation fees and expenses are recoverable when those losses are caused by the respondent's wrongful conduct. 1986 WL 5666 (N.D. Ill. 1986). In *Michelin Tire*, the court held that litigation fees and expenses were sufficient damages to sustain the defendant's counterclaim of fraud. Although plaintiffs argue that *Michelin Tire* is not applicable, the cases are similar in that the allegation of fraud is not directed towards the attempt to enforce the agreement. Rather, like *Michelin Tire*, the fraud alleged by defendants lies in

6

the inducement to enter into the agreement. In other words, defendants argue that but for plaintiffs' allegedly fraudulent conduct, defendants would never have signed the Note in the first place. I find defendants' argument that the litigation fees and expenses are the direct result of plaintiffs' alleged wrongdoing compelling, and this exception to the American Rule barring recovery of attorneys fees in the absence of specific contractual or statutory authority is supported by Illinois case law. *See Sorenson v. Fio Rito*, 90 Ill. App.3d 368, 372-374 (1980).

Additionally, plaintiffs' argument that defendants cannot possibly plead damages because they have come into possession of a large sum of money that they have not repaid is unconvincing. It is defendants' contention that they would have never accepted the $135,000 had they known that the Note would actually be enforced. Plaintiffs strongly argue that "defendants are prevented as a matter of law from claiming that they were defrauded as to the terms of the Note" because defendants signed the Note and Mortgage, and the terms of these documents were clear. However, this argument misses the point of defendants' case, for defendants do not contest that they signed the Note, nor that they saw and understood its plain language. The crux of defendants' argument is that they were explicitly told and promised that the contents of the Note were essentially meaningless, that no matter what the Note or Mortgage said, these documents were mere formalities allowing plaintiffs to escape adverse tax consequences. This argument is not as frivolous as plaintiffs vehemently assert. If plaintiffs had made a gift of the money in accordance with Illinois law, then the $135,000, being in excess of $20,000, would be taxed quite heavily. Alternatively, if plaintiffs made a loan (actual intentions put aside) that ended up unpaid, the $135,000 would be considered a loss, as opposed to a gift. Plaintiffs' own argument that defendants manipulated and tricked plaintiffs into giving them the money by taking advantage of plaintiffs' emotional distress over their sick child actually works against plaintiffs more than for them. If the $135,000 was indeed a loan

that defendants were expected to repay at some point, and both parties agreed and understood that the Note would be enforced at the time of its signing, then why would defendants need to manipulate or trick plaintiffs into making a loan for which repayment has been promised? Defendants' alleged manipulating and trickery would make more sense if the money was, in one way or another, a gift.

Finally, plaintiffs argue that defendants cannot submit evidence supporting their fraudulent misrepresentation counterclaim because according to the doctrine of merger and the parol evidence rule, "a written agreement that is complete on its face supercedes all prior agreements on the same subject matter and bars the introduction of evidence concerning any prior term or agreement on that subject matter." *Magnus v. Lutheran General Health Care System*, 235 Ill. App. 3d 173, 181 (1992). Similarly, plaintiffs argue that "[d]efendants are barred from asserting defenses of promissory estoppel and fraudulent misrepresentation because a written contract governing the transfer of funds exists." However, if I take defendants' allegations as true, which I must for the purpose of plaintiffs' motion to dismiss, it would appear that there was no meeting of the minds, which is required for a valid contract. *See, e.g., Comprehensive Merchandising Catalogs, Inc. v. Madison Sales Corp.*, 521 F.2d 1210, 1214 (7th Cir. 1975). Plaintiffs press strongly on the point that defendants read, understood, and signed the Note and Mortgage, which were clear and unambiguous in their terms, but this argument does not address the issue raised by defendants: the inducement to sign these documents. In alleging fraudulent misrepresentation, defendants are not arguing that the oral promise supplants the Note and Mortgage; rather, defendants are arguing that it was this oral promise that gave birth to these documents—without the promise, the Note and Mortgage would have never come into being. Consequently, dismissal of defendants' fraudulent misrepresentation counterclaim on the basis of the doctrine of merger and parol evidence rule is improper at this time, given that the existence of a valid contract has not yet been established. Dismissal of defendants' affirmative

8

defense is also inappropriate at this time because the defense is available to defendants as long as the validity of the Note is in question. For these reasons, plaintiffs' motions to dismiss defendants' counterclaim and affirmative defense of fraudulent misrepresentation are denied.

PROMISSORY ESTOPPEL

With respect to plaintiffs' motion to dismiss defendants' promissory estoppel affirmative defense, defendants allege that "[i]n reliance upon the gift from his parents, [defendants] abandoned the application process for securing conventional financing for the construction of [their] primary residence" and "completed the construction of their primary residence at an accelerated rate and incorporated numerous substantial improvements to their primary residence which would have not been completed but for the gift." Defendants also assert that if it were not for the alleged gift, they would have secured conventional financing, and the implication of their counterclaims and affirmative defenses is that had they known the terms of the Note would be enforced, they would have chosen conventional financing over a loan from plaintiffs. Promissory estoppel consists of four elements: "(1) that the defendant made a promise unambiguous in its terms, (2) that plaintiff relied on the promise, (3) that this reliance was expected and foreseeable from the defendant's position, and (4) that the plaintiff's reliance on the promise was detrimental." *Gerson Electric Construction Co. v. Honeywell, Inc.*, 117 Ill. App. 3d 309, 312 (1983). Clearly, the parties dispute whether plaintiffs made an unambiguous promise that the money was a gift, but I must accept defendants' version of the facts for the purpose of this motion. Plaintiffs again rely on the argument that the existence of the Note and Mortgage preclude this affirmative defense, but this argument once more misses the point. The facts alleged by defendants indicate that despite the existence of the Note and Mortgage, an agreement may not have actually existed because there was no meeting of the minds. Thus, promissory estoppel is available to defendants at this time. If defendants' version of the story

9

is true, then not only is there an invalid contract, but there is also a justified reliance that resulted in detriment to defendants. If plaintiffs did represent to defendants that they would give defendants the money needed for their home improvements, defendants understandably forewent undertaking a loan and began making the improvements. After reviewing the record before me, I find that defendants have pled sufficient facts to defeat plaintiffs' motion to dismiss the promissory estoppel affirmative defense.

DECLARATORY JUDGMENT

Plaintiffs also seek to dismiss defendants' counterclaim for declaratory judgment on the grounds that it "fails to state a cause of action, fails to seek affirmative relief from plaintiffs, and merely asserts a defense to Plaintiffs' claims." However, a declaratory judgment "may be granted 'whether or not further relief is or could be prayed,'" and absent the provision of special statutory proceedings, "[t]he existence or non-existence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared." Fed. R. Civ. Pro. 57 advisory committee's note. Thus, dismissal of defendants' counterclaim for declaratory judgment is not appropriate on the basis of plaintiffs' argument. At this time, I am only considering motions to dismiss and cannot rule on the merits of either side's arguments. Thus, the issue here is whether defendants have pled facts sufficient to support their counterclaim for declaratory judgment. Defendants seek a judgment declaring the $135,000 to be a gift and that consequently, they are under no obligations to plaintiffs. The facts as alleged by defendants indicate that regardless of the Note, the intent behind the transfer of the $135,000 may have been donative. Thus, I find that defendants have adequately pled their declaratory judgment counterclaim, and deny plaintiffs' motion to dismiss it.

CONCLUSION

For the reasons stated above, defendants' motion to dismiss Count IV of plaintiffs' First Amended Complaint is granted. Plaintiffs' motions to dismiss defendants' counterclaims and affirmative defenses are denied.

ENTER:

James B. Zagel
United States District Judge

DATE: 3 Oct 2002